**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-01-221(3) |
| | § | C.A. No. C-07-260 |
| WILLIAM DAVID HARBIN, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DISMISSING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE, AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

On June 6, 2007, the Clerk received from William David Harbin ("Harbin") a document titled as a "Habeas Corpus Petition Pursuant to U.S.C.A. Const. Art. 1, §9, Cl. 2" with a supporting memorandum. (D.E. 124, 125.)[1] The motion, deemed filed as of May 29, 2007,[2] was docketed as a motion pursuant to 28 U.S.C. § 2255 and was treated as such by the Court. By Order entered June 7, 2007, the Court denied the motion prior to a government response both because it was time-barred and because the sole claim raised therein was without merit. (D.E. 126.) The Court also denied Harbin a Certificate of Appealability. (D.E. 126.)

On July 23, 2007, the Clerk received from Harbin a document titled as an "Amendment to Habeas Corpus Petition," in which he reiterated the sole claim raised in his earlier petition and also

---

[1] Dockets entries refer to the criminal case, C-01-cr-221.

[2] The Clerk received Harbin's motion on June 6, 2007. The motion indicates that it was signed and mailed (presumably by giving it to prison officials), on May 29, 2007 (D.E. 79 at 7). It is thus deemed filed as of May 29, 2007. Houston v. Lack, 487 U.S. 266, 276 (1988) (a document is deemed filed by a *pro se* prisoner when it is delivered to prison authorities for mailing, postage pre-paid). See also United States v. Young, 966 F.2d 164, 165 (5th Cir. 1992) (providing benefit of Houston v. Lack to *pro se* prisoner in § 2255 proceedings); Rule 3(d), RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS (§ 2255 motion is deemed timely if inmate deposits it in the institution's internal mailing system on or before the last day for filing).

challenged the Court's "restyling" of his original filing into a § 2255 motion. Harbin argued that the "restyling" was improper because he was not given an opportunity to amend, dismiss or allow his pleading to remain as filed. (D.E. 128 at 2.)

Finding merit in Harbin's contention that his motion was improperly construed as a § 2255 motion because he had not been given ample warning of the new construction, the Court vacated its prior order and final judgment denying his motion. (D.E. 129.) It also notified Harbin that it intended to construe his motion as a motion pursuant to 28 U.S.C. § 2255. (D.E. 129). Pursuant to the directives of Castro v. United States, 540 U.S. 375 (2003), the Court gave Harbin the opportunity to supplement his motion or to voluntarily withdraw it. (D.E. 129). The order required that any such request from Harbin be filed within 45 days after the entry of the Order. (D.E. 129 at 3.) Thus, he had until September 6, 2007 to respond.

On August 13, 2007, the Court received several documents from Harbin in apparent response to the Court's July 23, 2007 Order. (D.E. 130, 132.) Additionally, the Clerk received from Harbin a document titled as a "Motion for Declaratory Judgment" on August 22, 2007. (D.E. 131.) Significantly, none of these filings indicate that Harbin wishes to withdraw his earlier-filed motion, and none add any additional claims to the sole claim he previously raised. Instead, he basically reiterates his earlier claim and adds some additional arguments in support thereof. Thus, while the Court has considered these filings and the arguments raised therein, the Court is essentially faced with the same situation as the last time the Court addressed the merits of Harbin's "habeas petition."

Because he has not indicated an intent to withdraw his motion and because he challenges his conviction on the grounds of jurisdiction, his motion is properly construed as a § 2255 motion. For the reasons set forth below, Harbin's § 2255 motion (D.E. 124, 125) is DENIED. Additionally, the Court DENIES Harbin a Certificate of Appealability.

## I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

## II. FACTS AND PROCEEDINGS

On July 11, 2001, Harbin was charged with two co-defendants in a two count indictment. In Count One, Harbin was charged with knowingly and intentionally possessing with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (D.E. 1). In Count Two, Harbin was charged with knowingly and intentionally possessing with intent to distribute approximately 850 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (D.E. 1). Harbin proceeded to trial and the jury returned a guilty verdict on both counts on November 27, 2001. (D.E. 68.)

The Court ordered the U.S. Probation Office to prepare a Presentence Investigation Report ("PSR") and sentencing occurred on February 5, 2002. (D.E. 91.) The Court sentenced Harbin to 121 months in the custody of the Bureau of Prisons on each count, to be served concurrently, to be followed by a five-year supervised release term on each count, to run concurrently, and also imposed a $100 fine and $100 special assessment on each count. (D.E. 91, 93.) Judgment was entered on February 12, 2002. (D.E. 93). Harbin timely appealed, and the Fifth Circuit denied his appeal in a per curiam opinion issued December 3, 2002. (D.E. 119.) Harbin did not file a petition for writ of certiorari. (See generally docket sheet in United States. v. Harbin, No. 40324 (5th Cir.).) Harbin's motion, titled as a "habeas corpus petition," was filed on May 29, 2007. (D.E. 125.)

## III. MOVANT'S ALLEGATIONS

Harbin's motion is replete with "boiler plate" materials that he has copied from other sources and pieced together to make his primary argument. In it, he argues that this Court did not have

3

jurisdiction to indict and convict him because 18 U.S.C. § 3231 (which gives the federal courts original jurisdiction over all federal crimes) is not a validly enacted law. He argues that the statute is unconstitutional because Public Law 80-772, which codified Title 18 of the United States Code, was not validly enacted.

In support of his claim, he points to the legislative history of Public Law 80-772, which he claims was never correctly passed by both houses of Congress in the same session Congress, and thus is an invalid law. (See generally D.E. 124, 125.) Specifically, he claims that the House version of the bill died due to two sine die adjournments, and that the amended 1948 bill was read only once in the Senate and was thus not enacted properly (D.E. 124 at 6-9, 11-17; D.E. 125 at 2). He further claims that the Senate version of the bill was an entirely different bill textually than the one signed by the Speaker of the House, the President pro tempore of the Senate, and President Truman, and that the signatories knew "the enacting clause was false" (D.E. 124 at 10; D.E. 125 at 1-2.). Accordingly, he posits that 18 U.S.C. § 3231 is unconstitutional, and that the statute's "jurisdictional nullity" "voids the judgment order in the instant case and cannot lawfully be procedurally barred by the PLRA." (D.E. 124 at 2.)

In his prayer for relief, Harbin requests that this Court expedite his appeal to relieve him from "his illegal confinement," declare his indictment and conviction void as a matter of law, declare his judgment and illegal restraints contrary to law and a violation of his Constitutional rights, declare Public Law 80-772 and 18 U.S.C. § 3231 unconstitutional, issue an order vacating his judgment and conviction and finding him actually innocent of the charged crime, and order his immediate release. (D.E. 124 at 24-25.)

For the reasons set forth herein, Harbin's claim fails.

## IV. DISCUSSION

**A.     Statute of Limitations**

A motion made under § 2255 is subject to a one-year statute of limitations, which, in most cases, begins to run when the judgment becomes final.[3] 28 U.S.C. § 2255. The Fifth Circuit and the Supreme Court have held that a judgment becomes final when the applicable period for seeking review of a final conviction has expired. Clay v. United States, 537 U.S. 522, 532 (2003); United States v. Gamble, 208 F.3d 536, 536-37 (5th Cir. 2000) (*per curiam*).

In this case, Harbin appealed, and the Fifth Circuit denied his appeal by order entered December 3, 2002. (D.E. 119.) The period for Harbin to file a petition for writ of certiorari expired 90 days after that date. S. Ct. R. 13(1). Harbin did not file a petition for writ of certiorari. His conviction thus became final when the 90-day time for filing the petition expired, or on March 3, 2003. See Clay, supra. Harbin's time period for filing a motion pursuant to 28 U.S.C. § 2255 expired a year after that date, or on March 3, 2004. Harbin's motion is deemed filed as of May 29, 2007. Thus, it was filed more than three years beyond the deadline as calculated under § 2255(1), and is untimely.

Harbin provides no explanation for the untimeliness of his motion. Instead, he claims that his

---

[3] The statute provides that the limitations period shall run from the latest of:

(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from filing by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

motion is based on "newly discovered evidence," (D.E. 132 at 1-2) and thus should be deemed timely under 28 U.S.C. § 2255(4). The "newly discovered evidence" he points to is his discovery of the alleged improprieties in the passage of Public Law 80-772. Those alleged improprieties, however, are not "*facts* supporting his claim." Cf. 28 U.S.C. § 2255(4). Moreover, even if the alleged improprieties in fact occurred, they occurred in 1947 – well before his conviction. They certainly could have been discovered through due diligence prior to the expiration of his § 2255 filing deadline. The Court thus finds no merit in his contention that he is entitled to statutory tolling.

Similarly, Harbin does not argue for equitable tolling. In any event, while the limitations period for § 2255 motions is not considered a jurisdictional bar, it is subject to equitable tolling "only 'in rare and exceptional cases.'" United States v. Riggs, 314 F.3d 796, 799 (5th Cir. 2002) (quoting Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998)). In short, neither Harbin's motion nor the record offers any basis at all for equitable tolling, let alone establishes that his is the rare or exceptional case where such tolling is required. Moreover, as noted, the record discloses no basis for applying any subsection other than § 2255(1) to determine the start of the limitations period.

Accordingly, the Court concludes that Harbin's failure to file his § 2255 motion within the one-year limitations period requires that the motion be dismissed with prejudice as time-barred.

### B.     Arguments Challenging the Validity of Public Laws 80-772

Even if it were properly before the Court, Harbin's sole claim is without merit. As noted, Harbin claims that the statute used to indict and convict him was not validly enacted and thus that the Court had no jurisdiction over his criminal case. Specifically, Harbin claims that the bill that eventually became Public Law No. 80-772 never passed both houses of Congress in the same version. He contends that the bills were acted upon by the House, but not the Senate, before Congress

adjourned and that the House version of the bill died at adjournment.

In support of his claim, Harbin attaches a copy of Kennedy v. Sampson, 511 F.2d 430 (D.C. Cir. 1974) and relies heavily on the text of two footnotes in the appendix to the opinion.[4] (See D.E. 125 at Appendix; D.E. 124 at 6-7, 9-10, 16-18.)   The text of one of those footnotes describes the adjournment in July 1947 (after the House passed the bill that would become Public Laws 80-772, but before the Senate did) as follows:

> The Senate and the House of Representatives adjourned on July 27, 1947 under a "conditional final adjournment" resolution, S. Con. Res. 33; 93 Cong. Rec. 10400.  Pursuant to the resolution, the two Houses were to stand in adjournment until January 2, 1948, unless recalled into a session earlier by specified Senate and House leaders.  In effect, the adjournment was a sine die adjournment, not an intrasession adjournment.

Kennedy, 511 F.3d 430, Appx. at n.4.  When Congress adjourns sine die, unpassed bills die of their own accord.[5]  Thus, the footnotes in Kennedy appear to lend some credence to Harbin's arguments.

But those footnotes must also be read in context.  It is clear from the context that the intended meaning of those words was that the July 1947 recess was not an *intrasession* recess (which was what the rest of the Appendix referred to), but an *inter*session recess.  That is, although the term "sine die" is used in the footnotes, it was intended to convey that a session of Congress was ending, rather than merely having a break in the session.  It should not be read as Harbin reads it, to mean that the entirety of the Congress (i.e., both sessions of Congress) ended at the time.  Instead, only one of the two sessions of Congress ended.  The text where the footnotes occur make this clear, too, because it

---

[4] The issues and holding in Kennedy are irrelevant to Harbin's motion, and he does not rely upon any holdings in the case.  Thus, the Court does not address them, nor the later authority calling those holdings into doubt.

[5] The term "adjournment sine die" is defined as "[t]he ending of a deliberative assembly's or court's session without setting a time to reconvene."  Black's Law Dictionary 44 (8th ed. 2004).

7

indicates that footnotes 4 and 5 refer to the 1st session of the 80th Congress, and the 2nd session of the 80th congress, respectively. Taken in context, those footnotes cannot be read literally to mean that there was an adjournment sine die of that entire Congress, such that all pending bills died. Moreover, the 80th Congress did not adjourn sine die in July 1947. When the first session adjourned, it did so to a date certain, not sine die. See Kennedy, 511 F.2d 430, Appx. at n. 4 (Congress adjourned in July 1947 until January 2, 1948). Accordingly, the Court finds no merit in Harbin's contentions.

The Court further notes that numerous other district courts have rejected the same or similar argument raised by § 2255 movants, including two district judges of the Southern District of Texas. See United States v. Martinez, Cr. No. C-04-157, 2006 WL 1293261 (S.D. Tex. May 6, 2006) (Chief Judge Head determining that the same argument is invalid and erroneous); Delreth v. United States, Cr. No. L-03-1745-6, 2006 WL 1804618, at *4 (S.D. Tex. June 27, 2006) (United States District Judge Kazen stating that "[p]etitioner's analysis does not persuade the Court that there is any material flaw in the jurisdictional statute, and additional factors militate strongly against him" and further noting that, "even if 18 U.S.C. § 3231 was flawed, legislation that pre-dated section § 3231 would have operated to give the Court jurisdiction over federal crimes"); see also United States v. Felipe, 2007 WL 1740263 (E.D. Pa June 14, 2007) (collecting authority and concluding that "this mythical story concerning the irregular adoption of Public Law Number 80-772 is utterly baseless").

Moreover, there is an additional reason to reject Harbin's claim: the "enrolled bill rule." In short, that rule provides that an attested "enrolled bill" – one signed by the leaders of the House and Senate – establishes that Congress passed the text included therein in a constitutional manner and it "should be deemed complete and unimpeachable." Public Citizen v. United States District Court for the District of Columbia, 486 F.3d 1342, 1343 (D.C. Cir. 2007) (quoting Marshall Field & Co. v.

Clark, 143 U.S. 649, 672-73 (1892)).

In Public Citizen, the District of Columbia Circuit Court of Appeals held that a district court had properly dismissed a constitutional challenge to the Deficit Reduction Act of 2005 premised on the ground that the statute was invalid because the bill that was presented to the President did not pass both chambers of Congress in the exact same form. 486 F.3d at 1343-45. The Court explained the rule, based on Marshall Field, as follows:

> "It is not competent for [a party raising a bicameralism challenge] to show, from the journals of either house, from the reports of committees or from other documents printed by authority of Congress, that [an] enrolled bill" differs from that actually passed by Congress. [Marshall Field, 143 U.S.] at 680. The only "evidence upon which a court may act when the issue is made as to whether a bill . . . asserted to have become a law, was or was not passed by Congress" is an enrolled act attested to by declaration of "the two houses, through their presiding officers." Id. at 670, 672. An enrolled bill, "thus attested," "is conclusive evidence that it was passed by Congress." Id. at 672-73. "[T]he enrollment itself is the record, which is conclusive as to what the statute is ...." Id. at 675 (internal quotation marks omitted).

48 F.3d at 1350.

This rule mandates that this Court accept as conclusive Public Law 80-772, and reject Harbin's request that the Court look behind the bill at the Congressional actions taken on it while pending. Instead, the Court must treat the text in the enrolled bill as "complete and unimpeachable." Public Citizen, 486 F.3d at 1343 (quoting Marshall Field, 143 U.S. at 672-73). Notably, the Seventh Circuit Court of Appeals recently utilized the enrolled bill rule to reject a claim identical to the one raised by Harbin. See United States v. Miles, 2007 WL 1958623, *1 (7th Cir. July 3, 2007) (citing Marshall Field and Public Citizen, supra).

In short, the "enrolled bill rule" makes it unnecessary to review Harbin's contentions concerning legislative irregularities, and, in any event, it appears that the law challenged by him was

9

properly enacted into law. Moreover, as noted by Judge Kazen and other courts, see, e.g., United States v. Risquet, 426 F. Supp. 2d 310, 311-312 (E.D. Pa. 2006), even if the 1948 amendment to § 3231 were defective, this Court would nonetheless retain jurisdiction over Harbin's case because the predecessor statute to § 3231 also provides for such jurisdiction. Delreth, supra, 2006 WL 1804618, at *4.

For the foregoing reasons, Harbin's § 2255 motion is DISMISSED WITH PREJUDICE.

**C.      Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Harbin has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires

a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

The Court concludes that reasonable jurists could not debate the denial of Harbin's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Similarly, as to this Court's resolution of Harbin's motion on procedural grounds, the Court finds that Harbin cannot establish at least one of the Slack criteria. Specifically, jurists of reasons would not find debatable this Court's ruling that Harbin's motion is untimely. Accordingly, Harbin is not entitled to a COA.

## V. CONCLUSION

For the above-stated reasons, Harbin's motion under 28 U.S.C. § 2255 (D.E. 124) is DISMISSED WITH PREJUDICE. The Court also DENIES him a Certificate of Appealability. Finally, Harbin's later-filed motion for declaratory judgment (D.E. 131) is DENIED.

Ordered this 21st day of September, 2007.

_____
Janis Graham Jack
United States District Judge